THE TRAVELERS' INSURANCE COMPANY, Respondent, *v.* ANN HEALEY and Others, Appellants; SAMUEL A. PETERSON and Another, Respondents.

*Life insurance — chapter 248 of 1879 — rights of beneficiaries under an assignment thereof by a wife — surrender by an assured to the insurer for cash — bill of interpleader.*

The insured named in a policy of life insurance borrowed of one Ann Healey, on the 13th day of April, 1884, a sum of money, and gave therefor the joint note of himself and his wife (the beneficiary in the policy), and also delivered to Healey the insurance policy as security. No written assignment of the policy was made at that time. The policy contained the provision "that no assignment of this policy shall be valid unless made in writing, indorsed hereon, and unless a copy of such assignment shall be given to this company within thirty days after its execution, and any claim against this company arising under this policy made by any assignee, shall be subject to proof of interest."

On October 29, 1886, the insured and beneficiary executed an assignment of the policy to Peterson and Packer. On November 1, 1886, Peterson and Packer gave the insurer written notice of the assignment of the policy to them. On May 24, 1889, Healey notified the insurer by letter that the policy had been verbally assigned to her, and on April 4, 1890, she sent the insurer a copy of a written assignment of the policy executed and delivered to her on that day by the insured and the beneficiary.

*Held,* that the transfer, by means of which Healey obtained possession of the policy, was at most only a pledge, and gave the pledgee, if any right, only a special property right in the policy which would divest the interest of the beneficiary; that it was at most an agreement to give a lien to secure the payment of the note.

A policy of life insurance must be regarded as a contract made between the insurer and the insured for the benefit of the persons named as beneficiaries therein, and the rights of the beneficiaries do not depend upon any privity between them and the insured, but rest in contract, and are capable of being enforced as other contracts, and stand where, at the maturity of the policy, the contract leaves them.

An insurance policy is a chose in action, and can pass only by assignment, and if the same is not transferable by delivery, and is negotiable only by assignment, it follows that the assignee thereof will take no greater interest than was possessed by his assignor at the time of the assignment.

A life insurance policy contained the following clause: "The said sum insured to be paid at the office of said company in (sum insured, $2,000.00) Hartford, Conn., to Josephine Doty (hereinafter called the assured), wife of the said insured, within ninety days after due notice and direct evidence that the death of the said insured has taken place during the continuance of this policy, and

within that period of any year for which period the premium shall have been actually paid, and not otherwise. In the event of any indebtedness to this company, either on the part of the insured or assured, then such sum only as shall remain in excess of such indebtedness shall become due and payable as aforesaid. And in case of the death of the said assured before the decease of the said insured, the said insurance shall be paid when due to their children, if any then living, or to their guardian, in trust, if they be minors. But if neither said assured nor any such child shall survive said insured, then said insurance shall be paid to his executors, administrators or assigns. * * *

"*Eighth.* That this policy may be converted into cash, at the option of the holder, at any time after the expiration of fifteen years from the date hereof, for the amount indorsed upon the back of this policy, corresponding to the age (nearest birthday) of the insured at the time of such conversion ; provided that this policy shall have been first paid up by the payment of ten full annual premiums, as herein stipulated."

*Held,* that the assignment of the policy by the wife of the insured would in no way affect the rights of the children of the insured, and such of them as were living at the time of the death of the insured would be entitled to the amount of the insurance, providing their mother died before their father;

That the assignee of the wife of the insured, prior to the death of the insured, who had living children, had no right under the eighth clause of the policy of insurance to surrender the same to the insurer for cash;

That the rights of the beneficiaries named in the policy could not be fixed or known until the death of the insured, and until the happening of that event the children had a contingent interest in the policy which would become vested if the wife of the insured should die before the maturity of the policy;

That under the provisions of clause eighth the policy must be deemed held by the parties to whom it was payable, and the possession thereof by the insured, or by any of such parties, must be considered the possession of all, and the option provided for by such clause could only be exercised by all of the parties to whom the policy was payable. (Per PUTNAM, J.)

Under the provisions of chapter 248 of the Laws of 1879 a married woman cannot make a valid assignment of an insurance policy on the life of her husband during his life without his consent in writing.

Chapter 248 of the Laws of 1879 authorizes a married woman, with the written consent of her husband, to assign a policy of life insurance, but contains no authority for her to assign the interest which, by the express terms of the policy, is reserved to her children. (Per PUTNAM, J.)

A bill of interpleader is justified if the rights of the conflicting claimants to a fund are in a condition, at the time of the commencement of the action, to be adjudicated and settled between themselves. (Per MAYHAM, P. J.)

HERRICK, J., dissenting.

APPEAL by the defendants Ann Healey and others from a judgment of the Supreme Court in favor of the defendants Samuel A.

Peterson and another, entered in the office of the clerk of the county of Rensselaer on the 29th day of June, 1894, upon the decision of the court rendered after a trial at the Rensselaer Special Term adjudging that the assignment of a certain policy of life insurance to the defendants Samuel A. Peterson and another was valid; that the defendants Peterson and another were the lawful holders and owners of the said policy; that the alleged assignment of the said policy to the defendant Ann Healey was invalid; that the defendants Starks Doty and another have no interest in the said policy; that this action is maintainable by the plaintiff, and that the plaintiff pay to the defendants Samuel A. Peterson and another, whenever they may exercise their option, whatever sum may become due on the said policy after deducting the expenses of the action, and upon such payment being made discharging the plaintiff from liability under such policy.

*William L. Learned,* for infant defendants, appellants.

*A. C. Comstock,* for Healey, appellant.

*Matthew Hale,* for the plaintiff, respondent.

*George R. Donnan,* for Peterson and Packer, respondents.

MAYHAM, P. J.:

On the 23d day of May, 1874, the plaintiff issued its policy for $2,000 on the life of Alonzo H. Doty, which policy contained the following provision which is material for consideration on this appeal for the purpose of determining who, if any, of the claimants were at the time of the commencement of this action beneficiaries entitled to the proceeds of this policy:

"The said sum insured to be paid at the office of said company in (sum insured, $2,000.00) Hartford, Conn., to Josephine Doty (hereinafter called the assured), wife of the said insured, within ninety days after due notice and direct evidence that the death of the said insured has taken place during the continuance of this policy, and within that period of any year for which period the premium shall have been actually paid, and not otherwise. In the event of any indebtedness to this company, either on the part of the insured or assured, then such sum only as shall remain in excess of such indebtedness

shall become due and payable as aforesaid. And in case of the death of the said assured before the decease of the said insured, the said insurance shall be paid when due to their children, if any then living, or to their guardian, in trust, if they be minors. But if neither said assured nor any such child shall survive said insured, then said insurance shall be paid to his executors, administrators or assigns.   *   *   *

"*Eighth.* That this policy may be converted into cash at the option of the holder at any time after the expiration of fifteen years from the date hereof, for the amount indorsed upon the back of this policy, corresponding to the age (nearest birthday) of the insured at the time of such conversion; provided that this policy shall have been first paid up by the payment of ten full annual premiums, as herein stipulated.'

"*Ninth.* That no assignment of this policy shall be valid unless made in writing, indorsed hereon, and unless a copy of such assignment shall be given to this company within thirty days after its execution; and any claim against this company arising under this policy made by any assignee, shall be subject to proof of interest."

On the 13th of April, 1884, the insured borrowed of the defendant Ann Healey $600, and gave a joint note of himself and the assured Josephine to Healey for the same, and also delivered to her the policy in question as security, which she has ever since retained. No assignment of the policy was made to her at that time; but on the 4th of April, 1890, Alonzo and Josephine executed and delivered to Healey a written assignment of all their right, title and interest in the policy. On the 29th of October, 1886, Josephine and Alonzo executed an assignment of the policy to the defendants Peterson and Packer, reciting in the same an indebtedness to them of $1,130.65, for which sum on the same day they perfected judgment against the defendants Alonzo and Josephine. On the 1st day of November, 1886, Peterson and Packer gave the plaintiff written notice of the assignment of the policy to them. On the 24th of May, 1889, Healey notified the plaintiff by letter that the policy had been verbally assigned to her to secure a $600 loan, and on the 4th of April, 1890, she, by her attorneys, sent the plaintiff a copy of the written assignment of the policy to her on that day. On the 22d of October, 1891, Ann Healey commenced an action

against the plaintiff to recover $740, in the complaint in which it is alleged that she " elects that the same be converted into cash."

On the 17th of November, 1890, an alleged guardian of the children of Alonzo and Josephine, all of whom were infants, forbade by letter the plaintiff from paying any thing on the policy either to Healey or Peterson and Packer, and therein asserted that the children of Alonzo and Josephine had an interest in the policy. None of the claimants under the policy have demanded that this policy be converted into cash, under the provisions of the eighth clause. of the same, except the demand made by Healey in her complaint in the action brought by her against the insurance company. Alonzo H. Doty and Josephine Doty are still living, as are the children.

On or about the 30th day of January, 1892, and while the said action brought by Healey against this plaintiff was still pending and undetermined, this plaintiff brought an action, alleging that the plaintiff has no interest in or claim upon the said moneys, but is ready and willing to pay such moneys into court to abide the event of any action between the said parties, or any order that the court may make with reference thereto, upon being discharged from liability to each of said claimants; and asking judgment that plaintiff may be allowed to pay the said moneys into court or to the defendant or defendants to whom said moneys of right belong, and that it be thereafter protected from the claims of all such persons, and that the defendant Ann Healey and all the defendants be enjoined and restrained from further proceeding with said action against this plaintiff, and that the rights of the parties defendant to the said fund, as against each other, may be determined and declared by the court.

The learned trial judge found that the title to this policy was in Peterson and Packer, who held the first written assignment from the insured and assured, and were entitled to exercise the option given by the policy to the holder thereof. That the assignment to Healey was invalid, and that she had no interest in the policy. That the children of the insured and assured have neither of them any interest in the policy, actual or contingent. By the judgment Ann Healey was perpetually enjoined from the further prosecution of her action against the plaintiff, and it directed the plaintiff to pay to Peterson and Packer the proceeds of the policy, whenever they should exer-

cise their option, less $100, cost allowed to the plaintiff in this action.

From the judgment the defendants Ann Healey and Starks A. Doty and Carrie E. Doty, children of the assured, appeal.

It is insisted on the part of the appellant Healey that this policy, by its terms, after the lapse of fifteen years from its date, became payable in cash at the option of the holder, and that by the delivery to her without assignment by the insured, as collateral to a loan after ten years from the date, she became the holder, and as against all but the plaintiff the assignee in law of the policy, and she insists that it does not lie with the other defendants to challenge her title on the ground that the policy, by its terms, required an assignment in writing. We think that that contention cannot prevail. She did not acquire possession of the policy by any written assignment as required by the terms of the contract itself, but received the same only as a pledge or collateral security for a loan made to the insured.

Such transfer was, at most, only a pledge, and gave the pledgee, if any right, only a special property right in the policy which would divest the interest of the assured. It was, at most, an agreement to give a lien to secure the payment of the $600. (*McFarland* v. *Wheeler*, 26 Wend. 467; *Ocean Nat. Bank* v. *Olcott*, 46 N. Y. 12; *McCaffrey* v. *Wooden*, 62 Barb. 316–333.)

Again, such transfer could not operate as a valid assignment by Josephine, one of the assured, for the reason that, by chapter 248 of the Laws of 1879, she could not make a valid assignment of a policy on the life of the husband for her benefit without his consent, in writing, during the life of her husband. (*Smillie* v. *Quinn*, 90 N. Y. 496; *Baron* v. *Brummer*, 100 id. 376; *Brick* v. *Campbell*, 122 id. 337.)

This policy was issued prior to the enabling act of 1879, and unless that act gave her power to assign this policy she could not do so while her husband was living, she having at the time living children.

At common law, and under the act of 1840 (Chap. 80), and all subsequent acts down to the enactment of chapter 248 of the Laws of 1879, a policy on the life of the husband for the benefit of the wife

was not assignable by her, where she had living children.   The act of 1873 (Chap. 821) only authorized a married woman to make an assignment of such a policy with the written consent of her husband, when she had no living children at the time.   It will be observed by an examination of all the decisions upon this subject, that the right to make such transfers has never been upheld except where authorized by the express terms of the statute.   In discussing this question Potter, J., in *Brick* v. *Campbell* (122 N. Y. 343), uses this language : " So strictly have the courts adhered to the enabling acts passed by the Legislature upon the subject of such policies, that they have refused to regard the general enabling acts in relation to married women, and their separate property, as having any reference or applicability to such policies."

Independently, then, of the requirements of the policy itself, that the transfer must be in writing, it seems quite apparent that no valid transfer of this policy was made to Healey.

This conclusion is reached aside from, and independent of, the question raised and pressed by the learned counsel for the children of Alonzo and Josephine, that as against them no valid assignment of this policy, either to Healey or Peterson and Packer, has been or can be made so as to divest the contingent interest of such children.

Three contingent beneficiaries are named in this policy.   The first taker is Josephine, the wife, if she survive her husband.   If she does not, then the second taker is the children or child of the insured living at the time of his death or the descendants of any who may have died, and in case no widow or descendants of the insured survive him, then his executors or administrators.   This policy must be regarded as a contract made between the plaintiff and the insured for the benefit of the assured named as beneficiaries therein.   The rights of the beneficiaries from the very nature of the contract do not depend upon any privity between the insured and the beneficiaries named in the policy, and do not depend upon the principle enumerated in the somewhat criticised authority of the case of *Lawrence* v. *Fox* (20 N. Y. 268).   The rights of the assured rest in contract and are capable of being enforced as other contracts, and stand where, at the maturity of the policy, the contract leaves them.

Those rights I think may be regarded as vested rights, subject only to be defeated by the happening of a contingency provided for in the policy itself. It is quite true that the force and character of such a contract are largely regulated by the statute in force at the time of the making of the contract or by some subsequent statute which may operate retrospectively on the same.

It is insisted by the learned counsel for Peterson and Packer that under the provisions of chapter 248 of the Laws of 1879, the wife who is named as beneficiary in this policy is fully authorized to assign the same with the consent of her husband regardless of the claim of her children as subsequent beneficiaries in the same policy. The provisions of that chapter are as follows :

" All policies of insurance heretofore or hereafter issued within the State of New York upon the lives of husbands for the benefit and use of their wives, in pursuance of the laws of the State, shall be from and after the passage of this act assignable by said wife, with the written consent of her husband, or in case of her death by her legal representatives, with the written consent of her husband, to any person whomsoever, or be surrendered to the company issuing such policy with the written consent of the husband."

It is to be observed that this provision of the statute makes no reference to policies for the benefit of children, as well as for that of the wife. The policy under consideration provides for both these classes of beneficiaries. It is true that the policy provides that it may be converted into cash after fifteen years at the option of the holder. But can the assignee, if one of the possible beneficiaries, without the consent of the other possible beneficiaries, be deemed the holder as against the rights of the latter ?

The death of Josephine before the assignment would have devolved the benefits of this policy on her children if her husband were at that time living.

It is difficult to see how any greater right could attach to her assignees than inhered in her at the time of the assignment. The policy is a chose in action which passes only by assignment, and as the same was not transferable by delivery, and negotiable only by assignment, it would seem to follow that the assignee took no greater interest than was possessed by the assignor at the time of the assignment. (*Davies* v. *Austen*, 1 Vesey's Ch. 247 ; *Greene* v. *Warnick*, 64

N. Y. 220.) Doubtless Josephine could at the time of making the assignment, with the consent of the husband, transfer to her assignee her contingent interest in the policy, and the assignee would, in the event of her surviving her husband, realize on the policy; but if her husband survived her the right which belonged to her or her assignee would vest, by the terms of the policy, in her children. Under such conditions can Peterson and Packer, as assignees of Josephine, be deemed the holders of this policy, as against the children, so as to adopt the option of converting this policy into cash while their rights to the same still exist and have not been extinguished?

Such a conclusion seems to be at war with the plain provisions and intent of the policy. The rights of children under policies issued on the life of the husband for the benefit of the wife seem to have been guarded by the Legislature when they are not made beneficiaries by the terms of the policy. By chapter 820 of the Laws of 1873 the wife was authorized to assign a policy in her favor with the consent of the husband, and will the same when she had no children. This authority negatives the existence of such right under that act when she has children.

But it is insisted that, under the provisions of chapter 248 of the Laws of 1879, the powers of a wife to assign a policy were extended, and that with the consent of her husband all obstacles in the way of an assignment are removed, and that the cases of *Brick* v. *Campbell* (122 N. Y. 337) and *Anderson* v. *Goldsmidt* (103 id. 617) are authorities in support of that contention. The rights of children in a policy issued on the life of a husband for the benefit of the wife were not involved or discussed in the case of *Brick* v. *Campbell* (*supra*). In *Anderson* v. *Goldsmidt* (*supra*) the policy was unlike the one at bar.

In that case the policy was issued to the wife on the life of her husband, payable May 31, 1885, to the wife, and in case of her death before her husband to her children.

Before the period for the maturity of the policy fixed in it she with her husband assigned it to the plaintiff in that action. She and her husband lived beyond the time of the maturity of the policy, and on the 31st of May, 1885, the personal representative of the assignee who had died sued upon the policy. The wife interposed

a claim for the money, and it was paid into court, and the title to the same, in a litigation between the wife and representative of the assignee, was held to be in the latter, notwithstanding the condition in the policy in favor of the children. In that case Judge EARL, after quoting the provisions of chapter 248 of the Laws of 1879, used this language: " The mere fact that she had children at the time she executed the assignment did not render her assignment void. The statute, whether there be children or not, gives the wife with the consent of her husband the absolute power to assign or surrender the policy. It is quite true that the children had a contingent interest in the policy, which would have become vested in case the wife had died before the policy matured. But here she survived that period, and hence the contingency did not arise which gave the children any interest whatever in the policy."

It will be seen in the case from which the above quotation is made that the whole case turned upon the fact that the wife survived the period at which the policy absolutely matured, to wit, May 31, 1885, when her right became absolute, and all possibility of a devolution of the benefits of the policy upon the children ceased.

The policy under discussion in the case at bar matures and becomes payable at the office of the company within ninety days after notice of the death of the insured. Clearly the rights of the beneficiaries named in the policy cannot be fixed or known until the death of the insured. That period has not yet arrived, and until it does, in the language of Judge EARL, " the children had a contingent interest in the policy which would have become vested in case the wife had died before the policy matured."

It follows, therefore, from the authority of *Anderson* v. *Goldsmidt*, referred to by the counsel for the respondents Peterson and Packer, that the children in this case have a contingent interest in this policy which will become absolute if Josephine die before the insured.

Nor does the expiration of fifteen years at which time the option of the holder to demand cash payment commences, constitute the maturity of the policy, so long as any contingency exists as to who shall be the ultimate beneficiary. It may be conceded that if all contingency was removed the person in whom the absolute right vests might, after the expiration of the fifteen years, exercise the

option. But so long as the ultimate right to this fund remains unsettled none of the contingent beneficiaries can exercise the option. But as Peterson and Packer have not assumed to exercise the option, the question of their right to do so is not before us.

If we are right in our conclusions above, the rights of the respective parties to the proceeds of the policy in question cannot be determined in this action. The right of Josephine to this money depends upon her surviving her husband. The right of Peterson and Packer depends upon the title of their assignor, which cannot now be determined. The right of the children of the insured depends upon the death of their mother before that of their father, all of which events are in the uncertain future.

It is also urged by the learned counsel for the appellant Doty that this action of interpleader cannot be maintained for the reason that the parties named as defendants are not all demanding the same relief or right as against the plaintiff.

The complaint alleges the issuing of its policy on the life of Alonzo H. Doty, sets out the policy and some of the acts done under it. Also sets up the claim made by Ann Healey to recover $740, the present cash value of the policy, and her election to accept that sum in full satisfaction for the amount of the same.

The complaint also sets up the claim of Peterson and Packer as assignees of the policy. No claim to this policy or fund by Starks Doty and Carrie E. Doty, infant children of the insured, was made against the plaintiff, but a letter from Peter Doty, claiming to be guardian of these children, was sent to the plaintiff forbidding payment to either Peterson and Packer or Ann Healey, claiming that the policy could not be properly assigned, and claiming that the infants had an interest in the policy. Under these facts the plaintiff claimed in its complaint that as it acknowledged its liability on the policy, the parties should interplead in this action and settle the question as to the rights under the policy between themselves to the same.

If the rights of these conflicting claimants were in a condition in this case at the time of the commencement of this action to be adjudicated and settled between themselves, then there was sufficient conflict between them to justify a bill of interpleader on the part of the plaintiff. (*Crane* v. *McDonald*, 118 N. Y. 648.)

But can the rights of the conflicting claimants be definitely settled by an interpleader so long as they are *inchoate ?*

The very nature of an interpleader seems to pre-suppose that the rights of the parties to the action are matured, fixed and determined, or at least so far settled as not to depend upon the happening of a future event which is certain to occur, but upon the order in which such event may occur the rights of the parties must depend. But so long as the contingencies upon which the rights of the respective parties depend continue to exist, it is alike impossible to determine who is to be the ultimate beneficiary in this policy or the amount of the liability of the plaintiff on the same. If Josephine survive her husband so that the title vest in her assignee, then the whole face of the policy would be due and pass to the assignee under the assignment, and the payment of $740 would not extinguish the plaintiff's liability. If Josephine should die before the insured, as we have seen, the title to the policy or the proceeds of it would vest in the children, who, as holders of the same, could exercise the option of then demanding the cash value, or they could refuse to exercise the option, and thus postpone the time of payment until the death of the insured, when they could then demand the full face of the policy. Under such conditions we do not think an action of interpleader will lie.

The parties defendant do not claim the same thing. Healey claims $740 cash; Peterson and Packer claim to be adjudged entitled to the policy with all benefits under it. The children claim a contingent interest in the policy, and ask that the adjudication as to the final right of the parties be postponed until either by the death of the insured or Josephine it may be ascertained who at that time shall be entitled to the beneficial interest under the policy. They make no claim against the plaintiff, but ask a postponement until their claim may mature. Under these conditions it does not seem to us that the requirements for an interpleader are met, even as laid down in *Crane* v. *McDonald* (118 N. Y. 648), relied upon by the learned counsel for the plaintiff, who concedes that in that case it was held : " That the material allegations in a bill of interpleader are : (1) That two or more persons have preferred a claim against the complainant; (2) that they claim the same thing ; (3) that the complainant has no beneficial interest in the thing claimed ; and (4)

that he cannot determine without hazard to himself to which of the defendants the thing belongs." (Citing *Atkinson* v. *Manks*, 1 Cow. 691–703.)

It follows that if such allegations are material in a complaint, they must be supported by the proof before a decree can pass in favor of the plaintiff. (1) The proof in this case fails to establish the facts necessary to support such allegations. All the parties defendant have not preferred a claim against the complainant; (2) all do not claim the same thing; (3) that the complainant has no beneficial interest in the thing claimed; (4) that the plaintiff cannot determine without hazard to itself to which of the claimants the thing belongs.

For this reason, and the reason stated in this opinion on the other branch of this case, we think the judgment should be reversed.

PUTNAM, J. :

Story, in his Equity Jurisprudence, remarks in reference to a bill of interpleader (10th ed., § 806) : " It is properly applied to cases where two or more persons severally claim the same thing under different titles or in separate interests from another person who, not claiming any title or interest therein himself, and not knowing to which of the claimants he ought of right to render the debt or duty claimed or to deliver the property in his custody, is either molested by an action or actions brought against him, or fears that he may suffer injury from the conflicting claims of the parties. He, therefore, applies to a court of equity to protect him, not only from being compelled to pay or deliver the thing claimed to both the claimants, but also from the vexation attending upon the suits which are, or possibly may be, instituted against him."

I think, under the doctrine just stated, this action was properly brought. Each of the defendants claimed an interest in the policy of insurance described in the complaint. Each claimed under such policy. Peterson and Packer urged that they were its absolute owners; the defendant Ann Healey made the same claim; while the defendants Doty asserted that they were vested with a contingent interest in said policy, which, upon the death of Josephine Doty before the decease of her husband, would become absolute.

Plaintiff admitted its liability under the policy in question to the

legal owner thereof, either for the sum of $2,000 on the death of the insured or for the sum of $740 when the action was commenced, if it should appear that such sum was then due under the option contained in the eighth clause of said policy.

An action had been commenced by Ann Healey, who claimed to be the holder of the policy, to recover $740 under the provisions of the said eighth clause. Each of the defendants had served a notice upon plaintiff forbidding the payment to Ann Healey of the sum claimed by her. When this action was commenced, the plaintiff was placed in such a position that if Ann Healey should recover judgment, and it should be compelled to pay the amount of her claim, it might be subjected to other actions by the other defendants, and hence would be liable to a double recovery under the same policy.

I think, therefore, that the conclusion reached by the learned trial judge, that the action was properly brought for the purpose of protecting plaintiff from a multiplicity of suits and also from a double recovery, was correct. (See *Crane* v. *McDonald*, 118 N. Y. 648.)

I am unable to agree, however, with his conclusion " that the defendants Starks A. Doty and Carrie E. Doty, or either of them, have no longer any interest, either actual or contingent, in the said policy."

The instrument insured the life of Alonzo H. Doty in the sum of $2,000 for the term of his natural life, said sum being payable to his wife Josephine, or, in case of her death before that of the insured, to their children, said Starks A. and Carrie E. Doty. It was held of a similar policy in *Whitehead* v. *N. Y. Life Ins. Co.* (102 N. Y. 143) that the wife and children acquired a vested interest in the policy at the moment of its delivery to the insured. (See *U. S. Trust Co.* v. *Mut. Ben. Life Ins. Co.*, 115 N. Y. 152–157.)

So, in this case, on the delivery of the policy, both the wife and children of the insured acquired a vested right therein, and I am unable to see why such right in the children does not still exist. The defendants Packer and Peterson have not elected to convert the policy into cash in pursuance of the provisions of the eighth clause therein, if they had the right so to do, and the trial court

determined that the defendant Healey acquired no interest in the policy under the verbal assignment to her; hence the question involved may be considered as if the instrument did not contain the said eighth clause.

Here, then, is a policy providing for the payment of $2,000 to the wife of the insured if she should survive him, and if not to the defendants Doty, her children. She could, with her husband's assent, assign her interest in the policy to the defendants Peterson and Packer, or to Healey, but she could not by such assignment interfere with or cut off the rights of her children. Their interest remains the same as if the assignment to Peterson and Packer or Healey had not been made.

Chapter 248 of the Laws of 1879, which authorizes a married woman, with the written consent of her husband, to assign a policy of insurance taken for her benefit on the life of her husband, contains no authority for her to assign the interest by the express terms of the policy reserved to her children. (*Knickerbocker Life Ins. Co.* v. *Weitz*, 99 Mass. 157; *Conn. Mut. Life Ins. Co.* v. *Burroughs*, 34 Conn. 305; *Chapin* v. *Fellowes*, 36 id. 132.)

If the policy in question had not been made payable to the children in case of the death of Josephine prior to that of her husband, the former could, under the act of 1879, with the consent of her husband, have conveyed an absolute title to the policy. It has been held that under chapter 80, Laws of 1840, and the several acts amendatory thereof, children of a married woman who has a policy on the life of her husband, unless actually named as beneficiaries in the policy, have no interest therein. (*Olmsted* v. *Keyes*, 85 N. Y. 593, 603-605.)

But in this case the policy is made payable to the children if the wife does not survive her husband; they are beneficiaries therein, and I am unable to see how she can extinguish their contingent interest. The case of *Anderson* v. *Goldsmidt* (103 N. Y. 617-621) does not hold a doctrine contrary to the views above expressed. In that case the insurance was upon the life of the husband for the benefit of the wife, and in case of her death before his was payable to their children. It provided for the payment of $1,000 on May 31, 1885, or within sixty days after his decease, and after due proof of his death had been given. Prior to May 31, 1885, the wife, with

the consent of her husband, assigned the policy. The action was brought after May 31, 1885, the policy having then matured. When the action was brought the interest of the children *by its terms had ceased;* the wife was living, and under the terms of the policy the $1,000 was payable to her. When the action was commenced any contingent rights of the children therein had become extinguished by the lapse of time, and the policy, by its terms, was payable to the widow or her assignee. It will be seen that the question involved in this case was not before the court in the cases cited. In *Conn. Mut. Life Ins. Co.* v. *Van Campen* (32 N. Y. St. Repr. 1125) I infer that the policy, by its terms, was not made payable to the children of the assured in case of her death, and hence the case is not in point.

I think, therefore, that while the assignment to Peterson and Packer conveyed the interest of the insured and his wife in the policy in question, the interest of the children therein remained unaffected. Should the insured die before Josephine, Peterson and Packer will be entitled, as assignees of Josephine, to recover the sum of $2,000. But should Josephine die before her husband the defendants Doty will receive the insurance money, no one authorized to do so having taken the benefit of the option in the eighth clause. The only effect of the assignment to Peterson and Packer was to place them in the place of Josephine, and the right of defendants Doty remained and remains unaffected. Yet, by the judgment rendered herein, their rights under the policy are cut off, although the defendant Josephine should not survive her husband, and although no one authorized to do so should ever exercise the option contained in the eighth clause of the policy.

For the reasons above suggested I concur with the conclusion reached by Justice MAYHAM that a new trial should be directed.

It is claimed by the learned counsel for defendant Healey that under the contract of insurance Alonzo H. Doty must be deemed the "holder" and entitled to convert the policy into cash under the eighth clause thereof. If this position is correct probably the delivery of the policy to defendant Healey by the insured in consideration of the loan of $600 might be effectual to transfer the same. (*Marcus* v. *St. Louis Mut. Life Ins. Co.*, 68 N. Y. 625.) In the case cited it was held that a life insurance policy could be transferred

by a mere delivery, without an assignment in writing, although the policy, by its terms, requires a written assignment. If the insured, Alonzo H. Doty, was the "holder" of the policy, within the meaning of the eighth clause of the policy, that provision in the contract was entirely for his benefit, and he could transfer his separate interest in the policy alone without his wife joining in the transfer, and as to an assignment of his separate interest under the contract of insurance, the act of 1879 did not apply. Hence, I am inclined to believe that if the position of the counsel is correct, that Alonzo H. Doty should be deemed the "*holder*" of the policy, his conclusion that the defendant Healey was entitled to maintain her action is also correct.

The question, therefore, arises, who was the holder of the policy? By it an insurance was effected for the benefit: *First*, of the wife; *second*, the children, and *third*, the estate of the insured in case his wife and children did not survive him. Does the word "holder" mean the party having possession of the policy, or the person or persons to whom it is made payable. If a promissory note is made to several persons and in possession of one, each of them are the legal owners and holders. The possession of one is that of all. If a note is made to A., but in possession of A.'s agent, A. is still the holder. I am inclined to believe that this policy, which secured the payment of $2,000 to Josephine Doty on the death of her husband, or, in case she did not survive him, to her children, or, if neither wife or children survived him, to his personal representatives, must be deemed *held* by the parties to whom it was payable, and that the possession of the policy by the insured, or by either of such parties, must be considered the possession of all. If the policy had been for the wife's benefit alone she would have been the holder and could have exercised the option in the eighth clause, or could, with her husband's consent, have assigned the policy and her assignee could have exercised such option. In such a policy as the one under consideration, in which several parties are interested, I am inclined to think that the option can only be made by all these parties together; that the word "holder" means the persons to whom the policy is by its terms payable — *the owners thereof*.

I conclude, therefore, that the trial judge was right in holding that the defendant Healey was not entitled to maintain her action

against the plaintiff. For the reasons first suggested, the judgment should be reversed and a new trial granted, costs to abide the event.

HERRICK, J., dissented.

Judgment reversed and a new trial granted, costs to abide the event.